(No. 36295.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CLARENCE SWETS, Plaintiff in Error.

*Opinion filed March 23, 1962.—Rehearing denied May 23, 1962.*

ROMAN E. POSANSKI, of Chicago, (CHARLES D. SNE-
WIND, of counsel,) for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield,
and DANIEL P. WARD, State's Attorney, of Chicago, (FRED

G. Leach, Assistant Attorney General, and John T. Gallagher, and M. Robert Ostrow, Assistant State's Attorneys, of counsel,) for the People.

Mr. Justice Klingbiel delivered the opinion of the court:

After trial by jury in the criminal court of Cook County, Clarence Swets was found guilty of selling an automobile held under a trust receipt transaction and wilfully failing to pay the amount due under the trust receipt, in violation of section 18.01 of the Uniform Trust Receipts Act (Ill. Rev. Stat. 1957, chap. 121½, par. 183.1). He was sentenced to the penitentiary for a term of not less than one year nor more than three. He has sued out this writ of error to review the judgment, contending that the evidence is insufficient, that improper argument by the State's Attorney deprived him of a fair trial, and that the statute under which he was convicted is unconstitutional.

The evidence shows that defendant was a used car dealer with sales lots in Calumet City and Lansing, Illinois. He also operated an auction lot in Lansing. He purchased many of his cars by financing them with Universal C.I.T. Credit Corporation through the use of trust receipts. Under the terms of these instruments defendant had the liberty of sale and was obliged to account to Universal for the proceeds. They further recite that Universal holds a security interest for the amount of the indebtedness shown, and that the chattels shall be kept at defendant's address until the indebtedness is paid.

According to the practice of the parties as described by Universal's district manger, when defendant desired to finance the purchase of a car or cars for resale he would advise Universal by telephone of the description of the car and the amount he wanted to borrow. The company checked on the application, using the Automobile Red Book to ascertain the loan value, and if everything was in order

approval was given. Defendant would then enclose a sight draft with a completed trust receipt inside the sight draft envelope, and deposit the sight draft in his bank account much the same as a check would be deposited. After the sight draft cleared through the Federal Reserve Bank in Chicago, Universal would receive a call from its bank, and Universal would check its records to see if it was an approved sight draft. If it was approved Universal would take a check to the local bank and pay for the sight draft, whereupon the trust receipt "was then our document giving evidence that we had extended credit to Swets' Motor Sales."

On April 3, 1958, defendant had some 186 cars, of which about 60 or 70 were on trust receipts with Universal C.I.T. For about a year and a half the automobile industry had been going through a recession during which the market on used cars dropped substantially. On that date an employee of Universal C.I.T. made one of his periodical checks of defendant's inventory and found upon preliminary examination that about 25 cars were missing. When asked about this, defendant suggested they have lunch and talk about the cars when they finished.

During lunch he made a phone call to his office and told his men to move all the automobiles out to a farm. After lunch, when Universal's employee suggested going back to finish the checking, defendant told him the cars were gone. According to the checker's testimony, when he inquired why and where the cars had been moved Swets replied "Well, let's just say I rolled C.I.T." In subsequent conversations with Universal's district manager and its branch supervisor, defendant refused to return the automobiles or disclose their whereabouts. The district manager testified that defendant told him he was going to sell the cars and use the money to keep himself in business, and would pay "as he was able to." The Chicago division manager for C.I.T. testified that on April 7, when he saw Swets at his place

of business, the latter said he had hidden the cars and was going to "roll" C.I.T., sell the cars and dispose of the money as he saw fit.

Among the cars on defendant's lot the morning of April 3 was a certain 1957 Cadillac coupe de ville under trust receipt to Universal C.I.T. in the sum of $3100. When the company's checker returned in the afternoon this automobile, together with others, had been removed. On April 8 defendant sold it, together with certain other cars not under trust receipts, for an undisclosed consideration. He did not account to C.I.T. for the proceeds. Defendant's acts with respect to this car form the subject of the present prosecution, the indictment alleging that he "then and there unlawfully, feloniously and wilfully failed to pay to said Universal C.I.T. Credit Corporation, the amount due said Universal C.I.T. Credit Corporation under said Trust Receipt."

The statute declares that "Where under the terms of a trust receipt transaction the trustee has no liberty of sale or other disposition or having liberty of sale or other disposition is to account to the entruster for the proceeds of any disposition of the goods, documents or instruments and where the trustee disposes of the goods, documents or instruments and wilfully and wrongfully fails to pay the entruster the amount due under the trust receipt, he is guilty of a felony and shall be imprisoned in the penitentiary for not less than one year nor more than 10 years." (Ill. Rev. Stat. 1957, chap. 121½, par. 183.1.) To sustain his contention that he was not proved guilty beyond a reasonable doubt defendant says there is no evidence of criminal intent. The position is without merit. It is not denied that he concealed the car in question, together with others under trust receipts, and repeatedly refused to return them or reveal their location. Testimony to statements by defendant of intention to "roll" C.I.T. and to dispose of the money from the cars as he saw fit is ample evidence of wilfullness. Although disputed by defendant, such testimony

is a sufficient basis from which the jury could find an unlawful intent, especially when considered in connection with his undisputed conduct. Questions of credibility, of course, are for the jury.

Defendant also argues that by attaching his bank accounts Universal prevented him from performing his obligation under the trust receipt. The argument cannot be accepted. It is based on a mere conclusion, and fails to establish inability to pay. The evidence shows that the proceeds of the sale in question were neither turned over to Universal nor deposited in defendant's bank account but were given to his sister.

The next contention is that the State's Attorney's argument denied defendant a fair trial. In the remarks complained of, the prosecutor illustrated a point by referring to a hypothetical case of theft. He also said he supposed that the money defendant allegedly would obtain "would be tax free if he didn't get caught." And in a third comment the prosecutor observed that a lot of people were watching the case "and if Swets can get away with it there are a lot of sharpies that will figure they can and they'll try it." In each instance defendant's objection was sustained. While the comments exceeded the bounds of propriety, we do not think that under the circumstances of this case they were sufficiently prejudicial to call for a reversal. Where it appears that improper remarks do not constitute a material factor in the conviction, or that they are of such a minor character that prejudice to defendant is not their probable result, the verdict will not be disturbed. (*People* v. *Berry*, 18 Ill.2d 453.) Such is the case here.

In contending that the statute is invalid—a contention made for the first time by motion in arrest of judgment—defendant asserts four respects in which he claims the constitution is violated. In *People* v. *Levin*, 412 Ill. 11, statutory provisions identical to the present ones were held invalid because there was nothing in the title of the act as it

then read to indicate a purpose of setting forth the penalties involved. Since that decision the provisions were re-enacted and the title of the act amended. Defendant's first constitutional complaint is that section 13 of article IV is offended because the provisions of the original act were not set forth in the amendatory act. The contention cannot be accepted. Section 13, insofar as it is relevant, provides that "no law shall be revived or amended by reference to its title only, but the law revived, or the section amended, shall be inserted at length in the new act." This provision has long been construed as requiring only that the complete section as amended shall be printed in full. It is not necessary that a repealed section, or a section as it existed before the amendment, shall be inserted at length in the amendatory act. *City of Marion* v. *Campbell,* 266 Ill. 256; *Freitag* v. *Union Stock Yard and Transit Co.* 262 Ill. 551.

It is next objected, with little argument and no citation of authority, that section 18.01 is too indefinite and uncertain. This question was not raised in the trial court, and defendant is not entitled to raise it for the first time on review. It is well settled that reversal of a judgment cannot be urged upon a ground not submitted to the trial court and upon which it did not and was not asked to decide. (*People* v. *Brand,* 415 Ill. 329.) We have examined the argument made, however, and find it to be without merit. The terms of the section are clear enough.

In his third constitutional contention defendant says the statute violates the prohibition against imprisonment for debt. Section 12 of article II provides that "No person shall be imprisoned for debt, unless upon refusal to deliver up his estate for the benefit of his creditors, in such manner as shall be prescribed by law, or in cases where there is strong presumption of fraud." Defendant argues that under the present statute a person is guilty of a felony "whenever he fails to pay over moneys as promised, after disposing of personal property, held by him under the terms of a trust re-

ceipt," and that the constitutional guaranty "cannot be evaded by making the nonpayment of a simple debt a crime." The argument misconceives the issue. The offense in question is not a matter of simple nonpayment, as defendant apparently assumes, but of wilful and wrongful nonpayment. The constitutional prohibition by its terms does not extend to cases where there is a strong presumption of fraud, and the statutory requirement that the proscribed conduct be wilful and wrongful is sufficient, we think, to sustain the power to punish by imprisonment. (Cf. *People v. LaMothe,* 331 Ill. 351.) The pattern of conduct exemplified by this record is the very thing at which the statute is aimed, and most certainly raises a strong presumption of fraud. Section 18.01 has not been shown to violate the constitutional guaranty against imprisonment for debt.

The final objection—that section 18.01 amends the Criminal Code by indirection—must also be rejected. The section describes an offense distinct from other crimes, and does not have the effect of an amendment respecting the nature of or punishment for larceny, larceny by bailee, embezzlement, fraudulent conversion or other similar offenses.

After carefully considering the record in this case, as well as the arguments of counsel and the authorities cited, we conclude that no error has been shown. The judgment of the criminal court of Cook County is therefore affirmed.

*Judgment affirmed.*