(No. 39513.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
ARTHUR ANDERSON, Appellant.

*Opinion filed May 27, 1971.*

ELMO KOOS, of Peoria, appointed by the court, for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and ROBERT S. CALKINS, State's Attorney, of Peoria, (THOMAS J. IMMEL, and FRED G. LEACH, Assistant Attorneys General, and ROLAND N. LITTERST, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE RYAN delivered the opinion of the court:

A jury in Peoria County found defendant guilty of the murder of Marjorie Hurd. He was sentenced to a term of 80 to 85 years in the Illinois State Penitentiary. Constitutional questions being involved, the appeal was taken directly to this court. 43 Ill.2d R. 603.

In two separate indictments defendant was charged with having murdered Dorrie Cooley and Marjorie Hurd on September 20, 1964. The State elected to try defendant first for the murder of Dorrie Cooley. This trial resulted in a hung jury.

Following the return of the two indictments by the grand jury, the cases were continued to October 9, 1964, to permit defendant to obtain counsel of his own choosing. On that date defendant informed the court he was unable to obtain counsel and the public defender was appointed to defend him. By the same order all motions were directed to be filed by October 26. On that date defendant's motions to quash were heard and denied, the defendant entered his pleas of not guilty and the cases were continued to November 16, 1964, for trial. The docket reflects that there were no proceedings in either case on November 16 but on No-

vember 17 on defendant's motion the cases were continued to January 11, 1965 for trial. On December 22, 1964, defendant moved for the appointment of different counsel and on December 23 the attorney now representing defendant was appointed and the public defender withdrew. Both cases were then again set for trial on January 11, 1965. In response to a motion by the defendant the State elected to try defendant first for the murder of Dorrie Cooley. Following the hung jury in the Cooley trial both cases were set for trial on March 22, 1965. On March 5 again in response to defendant's motion the State elected to try defendant for the murder of Marjorie Hurd. On March 19, 1965, defendant filed his motion for discharge alleging that more than 120 days had passed since his incarceration on September 20, 1964. The court denied the defendant's motion on March 22 and the next day the trial of defendant for the Hurd murder commenced resulting in the conviction reported above. Defendant has raised numerous points on this appeal. We will first consider his contention that he was deprived of his right to a speedy trial.

The record discloses that the defendant himself had sought and obtained a continuance and that the delay was caused by his own action. Accordingly, his right to be tried within 120 days after being taken into custody was not violated. (Ill. Rev. Stat. 1963, ch. 38, par. 103—5; *People* v. *Bagato,* 27 Ill.2d 165.) The case had been set for trial on November 16. For some unexplained reason no action was taken on that date but on the next day, November 17, on the motion of the defendant the case was continued for trial to January 11, 1965. The record indicates that following the motion for continuance made by defendant's counsel, the court inquired of the defendant, himself, as follows:

"Mr. Anderson, you have heard the motion made by your attorney in each case. Is that your desire? I want you personally to express yourself in connection with each of these cases. You understand that he is asking

that the trial which would have been held at this time, be delayed to and set for January 11, 1965."

The defendant replied, "Yes sir." The court repeated, "Is that your desire?" Again the defendant said, "Yes sir."

Clearly, the case was continued until January 11, 1965, on the motion of the defendant and the trial for the murder of Marjorie Hurd was commenced on March 23, 1965, less than 120 days thereafter.

Another procedural point raised by defendant will be considered before discussing the evidentiary aspects of the case. Defendant claims he was denied due process of law and equal protection of the law in violation of the State and Federal constitutions when the trial court denied his motion for a free transcript of the testimony taken at his trial for the murder of Dorrie Cooley which resulted in a hung jury. The defendant never requested that he be furnished with a transcript of the Cooley trial in the Hurd case. After the Cooley trial defendant's counsel filed a motion in that case requesting a transcript of the proceedings of the first trial, contending that since he would have to try that case again the transcript would be necessary for his preparation for the second trial. The trial court denied his motion. Subsequently, the State elected to try the defendant for the Hurd murder. The case was assigned to a different judge for trial. Defendant now claims his motion for a transcript should have been filed and docketed in both the Cooley case and the Hurd case but was erroneously filed in only the Cooley case. The record does not support this contention. During a hearing on preliminary matters before the Hurd trial started the State's Attorney stated he knew that defendant's counsel had ordered a portion of the testimony of the Cooley trial and that due to that court reporter's illness she may not have the testimony typed in time for this trial. It was only then that defense counsel informed the court that he had requested the free transcript in the Cooley

case which request had been denied. He indicated he did not intend to renew his motion in this case because he did not want to do anything that could be construed as causing a delay and thus interrupt the running of the 120 days. He further stated that he had ordered "certain matters" from the reporter for which he had paid. The court informed counsel that he should inform the court of the amount expended and the court would have him reimbursed. Counsel then informed the court that the amount had not been totally computed and that there would be further expenditures. It is clear from the cross-examination of at least some of the State's witnesses that counsel did have their testimony from the previous trial. Counsel has not advised this court as to what part of the transcript of the previous trial, if any, he did not have or in what manner his client has been prejudiced by the refusal of the court in the Cooley case to provide the transcript of the testimony. Under these circumstances we will not reverse the conviction in this case because of a technical error in the court's refusal in the previous case to furnish a free transcript.

The evidentiary aspects of the case are as follows. The alleged murders occurred in the restaurant of a motel-restaurant business property in Peoria Heights early in the morning of September 20, 1964. Two days before the occurrence, defendant, Arthur Anderson, had rented a room in the motel. Marjorie Hurd and Dorrie Cooley also lived in the motel. About 4:00 A.M. Marjorie Hurd and Dorrie Cooley came into the restaurant. They started a card game with the proprietor, Shirley Purham, and her brother, Agnew McDonald. Later a fifth person, Willie Venable, entered the restaurant and he took Dorrie Cooley's chair in the card game and she sat at the counter. The defendant then arrived entering through the back door and stood facing Mrs. Purham. He asked Dorrie Cooley for some money she owed him and told her he would give her four minutes to get it and left. He returned shortly and again demanded

money from Dorrie Cooley. Mrs. Purham testified that she heard a shot and looked up and saw a gun in defendant's hand. Marjorie Hurd placed her arm around Dorrie Cooley's neck and exclaimed, "Oh, my God, he's shot her." Whereupon defendant said, "I am going to kill you too, bitch." Two more shots were then fired. Mrs. Purham testified she heard the shots, saw the defendant with the gun in his hand and saw Marjorie Hurd fall. Willie Venable and Agnew McDonald, the other two persons present, testified substantially the same except they had run outside before the shots were fired that killed Marjorie Hurd. Following the shooting defendant left by the rear door and drove away. About 10 o'clock that night defendant was arrested at a gasoline station when he called a taxicab to take him to meet a train in Chillicothe.

On September 27, two boys found a .45 Colt automatic in some brush. They gave it to the father of one of the boys who in turn gave it to the police. The witnesses testified it looked like the gun the defendant had in his hand the night of the shooting. The gun, three spent cartridges found at the scene of the shooting and three slugs were delivered to a supervisor of the Illinois State Crime Laboratory. One of the slugs was taken from the wall of the restaurant, one was on the floor of an adjacent room, and one was found on the hospital cot on which Marjorie Hurd had been lying. The crime laboratory supervisor conducted test firings with the gun and testified that the slugs found and the ones he test-fired were fired from the same gun. He testified to the same effect as to the spent cartridges found at the scene of the shooting and those which he test-fired.

Defendant complains that the trial court limited his right to cross-examine certain witnesses, thereby violating his constitutional right to due process of law. This court has long adhered to the proposition that the trial court has discretion to restrict the scope of cross-examination. (*People v. McCain*, 29 Ill.2d 132.) Considerable latitude is always

allowed in cross-examination of witnesses but the scope of such examination is largely in the sound discretion of the court. (*People* v. *Gambony,* 402 Ill. 74.) The cross-examination of each prosecution witness was quite lengthy and thorough. We find no abuse of discretion in any limitations imposed by the court. We shall touch briefly upon specific instances of which the defendant complains.

Cabristo Collins was a prosecution witness. On cross-examination it was shown he was the owner of the building wherein the shooting occurred. It was also established that the business was operated by his sister-in-law, Shirley Purham. Defendant was permitted to establish that Collins had been in prison for possession of counterfeit money and had also been in a military penitentiary. However, the court sustained an objection to the question as to whether or not prostitution was carried on as part of the activities of the business. Defendant relies on *People* v. *Bond,* 281 Ill. 490; *People* v. *Winchester,* 352 Ill. 237, and *People* v. *Crump,* 5 Ill.2d 251, to support his position that this cross-examination was proper. The rationale of the holding in these three cases as summarized in *Bond* is: "If a witness is engaged in an unlawful and disreputable occupation, in justice and fairness he should not be permitted to appear before the jury as a person of high character who is engaged in a lawful and respectable occupation." (281 Ill. 490 at page 499.) This reasoning does not apply in this case. Collins was the owner of the premises. The business was operated by Shirley Purham and not by Collins. Furthermore, Collins was not permitted to appear before the jury as a person of "high character." Defendant on cross-examination had been permitted to show that he had twice been convicted and incarcerated in penitentiaries. We additionally observe that on direct examination Collins only testified as to his ownership of the premises and identified the plat that had been drawn thereof. We cannot discern any great impact such testimony would have on the jury and can only conclude

that the question concerning prostitution was posed not for the purpose of discrediting Collins's testimony but as an attempt to inject an irrelevant issue.

The defendant's objections to the court's limitation on the cross-examination of Willie Venable, Shirley Purham, a deputy sheriff, and the ballistic expert are not well taken and do not warrant discussion except to observe that we consider the limitation imposed by the court an exercise of sound judicial discretion.

It is also our opinion that the court did not make improper comments which denied defendant a fair trial. Defendant relies on four instances in the trial, each of which occurred during cross-examination of a prosecution witness and each statement taken out of context of the judge's remarks. We have carefully reviewed the remarks both in the context of the entire discussion and out of context as they have been presented to this court by the defendant. We find nothing in the remarks which in the slightest manner indicates the court's opinion as to any fact in the case nor does any remark indicate the court's belief or disbelief of any testimony. It cannot be said that any remark sought to discredit any witness or defendant's counsel. We can only conclude that the judge did not erroneously abandon his role as an impartial arbiter. (See *People* v. *Bartz,* 342 Ill. 56, 65; *People* v. *Finn,* 17 Ill.2d 614; *People* v. *Moriarity,* 33 Ill.2d 606.) We do not consider defendant's contention of sufficient merit to warrant burdening this opinion with a detailed analysis of each alleged prejudicial remark.

During cross-examination of one of the arresting officers defense counsel asked, "Did you ask him any questions pertaining to a gun?" The officer replied, "I told him, I said, those guns finally got you in trouble, didn't they." Defendant now contends that this statement was calculated to prejudice defendant and was an improper reference to his prior criminal record. The statement was elicited by the direct reference to a gun in counsel's question. If counsel

felt the answer was not responsive or was prejudicial he should have moved to strike the same at that time. Instead of manifesting any objection to the response counsel asked the witness, "Is that what you told him?" and still another question, "When did you tell him that?" It appears that the comment has assumed prejudicial proportions in counsel's mind only in retrospection. We consider any objection to this comment to have been waived. *People* v. *Trefonas,* 9 Ill.2d 92, 98.

Defendant contends that the prosecutor violated his constitutional right to due process of law by calling the jury's attention to defendant's refusal to testify. This contention finds no support in the context of the cross-examination by defendant of the county coroner but an attempt is made to give substance to the contention by lifting a few words out of the context. During the cross-examination of the coroner defense counsel attempted to ascertain whether or not defendant testified at the coroner's inquest. The prosecutor said he would stipulate that he did not. Defense counsel then indicated that because of the stipulation he would withdraw the question and said to the prosecutor, "You stipulated that Anderson was present at the inquest but did not testify." There is no indication that the prosecutor was attempting to comment on defendant's failure to testify at the trial. This objection, like the one in the preceding paragraph appears to have been the product of afterthought.

Defendant also complains of some remarks made by the prosecutor to the jury during the closing arguments wherein the defendant was referred to as a murderer and the jury was told it was to decide whether he was to be punished for the murder he committed or whether he was to be turned loose on the streets of Peoria. We have held that it is proper for the prosecutor to reflect unfavorably on the accused and to dwell unfavorably on the evil results of crime and to urge a fearless administration of the law. (*People* v.

*Wright,* 27 Ill.2d 497.) Furthermore, these comments appear to have been provoked by the remarks of defense counsel characterizing the defendant as an innocent "patsy" who was the victim of a conspiracy. One cannot provoke a reply to his own improper argument and then claim error. (*People* v. *Hayes,* 23 Ill.2d 527.) We find nothing in the prosecutor's argument that expresses his personal opinion as to the guilt of the defendant. The statement clearly contains a reference to the evidence and his opinion as to what the evidence proves and thus is not improper. *People* v. *Hoffman,* 399 Ill. 57, 65.

In defendant's post-trial motion he alleges that a bailiff had communicated with a juror during deliberation concerning the death of a relative. No proof was offered in support of the assertion. The allegation in the post-trial motion was not verified and no affidavit was filed in support thereof. This bare assertion is insufficient to warrant consideration of the question by this court.

Objection is made to People's instruction Number 6 (presumption of innocence and proof beyond reasonable doubt not intended to aid one in fact guilty to escape) and People's instruction Number 9 (reasonable doubt must be as to guilt on whole evidence). Defendant made no objection to instruction No. 6 at the conference on instructions. It may not now be attacked on appeal. (*People* v. *Calcaterra,* 33 Ill.2d 541.) This case was tried before January 1, 1969, the effective date of Supreme Court Rule 451 which provides for the use of Illinois Pattern Instructions in Criminal Cases. People's instruction No. 9 had been approved by this court in *People* v. *Weaver,* 18 Ill.2d 108. We deem it unnecessary to again discuss this instruction in this case.

The defendant contends that the court erroneously denied three motions for discovery. The first motion was made in chambers before the jury was picked. Defense counsel then made an oral motion for discovery of all interdepartmental communications and "instruments of communica-

tions" and photographs that the people had in their possession. When the State's Attorney stated that all these had been furnished to counsel, the court in attempt to ascertain what counsel was seeking took the motion point by point and asked as to interdepartmental communications what it was that he wanted and counsel replied "I would like everything that I have not already heretofore received". The second alleged discovery motion was made after the jury was chosen and before opening statements. Counsel in chambers told the court that in the previous case he had asked for permission to inspect the scene of the shooting which request had been denied and he "assumed" the same order would be binding on him in this case. Counsel then stated, "and I would like the record to show here that I made that application and that I was denied and that that denial would apply to this case * * *". The court replied, "Very well". Counsel now contends that this amounted to a denial of his motion to inspect the premises. Although we do not believe that the record actually reflects a motion and a denial we shall hereafter consider this discovery question with the others. The third discovery motion which the defendant now raises occurred during cross-examination of the State's ballistics expert who had testified that he had fired the gun and compared the spent bullets with the death bullets. Defense counsel then requested that the State be ordered to produce the spent bullets which request was denied.

Defense counsel seems to believe that some impeaching testimony may have been unearthed had the above three discovery motions been allowed. All statements, police reports, the gun, the death dealing slugs, pictures, the plat of the premises and other physical evidence were available for defendant's inspection. We are now asked to reverse and remand for a new trial on the bare possibility that a further examination of the State's files (beyond the extent heretofore authorized by this court) may disclose some impeaching

500

evidence. Defense counsel has not demonstrated for the benefit of this court any prejudice to his client by these denials other than through conjecture. We can see no possibility that defendant has been prejudiced thereby. As we indicate in the next paragraph, the evidence of the defendant's guilt is persuasive. We will not therefore set aside the judgment because of a bare technical ruling of the trial court unless there is present some indication that the result would have been different had the ruling of the trial court been otherwise. *People* v. *Tribbett,* 41 Ill.2d 267, 272.

Although defendant contends that the evidence was insufficient to convict him of murder we are of the opinion that the evidence persuasively indicates his guilt. We have detailed earlier in this opinion the testimony of Shirley Purham, Willie Venable and Agnew McDonald, telling how the defendant had entered the premises and shot Dorrie Cooley and of the events that led to the death of Marjorie Hurd. The determination of the jury will not be set aside by this court unless the evidence is so unreasonable, improbable or unsatisfactory as to justify a reasonable doubt of defendant's guilt. *People* v. *Hampton,* 44 Ill.2d 41; *People* v. *Pulaski,* 15 Ill.2d 291; *People* v. *Lamphear,* 6 Ill.2d 346.

The judgment of the Peoria County circuit court is affirmed.

*Judgment affirmed.*