THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT L. DAVIS *et al.*, Defendants-Appellants.

(No. 56652;

First District (2nd Division)—March 20, 1974.

James J. Doherty, Public Defender, of Chicago (Jean Essary, Assistant Public Defender, of counsel), for appellant Robert L. Davis.

Charles Locker, of Chicago, for appellant Charles Anderson.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis, Barry Rand Elden, and Mark R. Harms, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Defendants Robert L. Davis and Charles Anderson were found guilty by a jury on two counts of armed robbery. Defendant Davis was sentenced to two concurrent penitentiary terms of from 15 to 40 years; defendant Anderson was sentenced to two concurrent penitentiary terms of from 10 to 30 years. Defendants appeal from the judgments of conviction, and from the sentences imposed; they are represented by separate counsel on appeal.

Both defendants raise these issues on appeal:

(1) whether defendants were deprived of due process of law in that their in-court identifications resulted from an unnecessarily suggestive pretrial lineup and were not established by independent origin; and

(2) whether the prosecution's evidence in the court below established their guilt beyond a reasonable doubt.

In addition, defendant Davis presents these issues for review:

    (3) whether he was afforded a fair trial where he refused to testify in his own behalf owing to a claimed fear of prejudice founded upon the possible admission into evidence of a prior conviction;

    (4) whether, where police officers had hours to obtain warrants, but did not, a warrantless search was unreasonable and a warrantless arrest was without probable cause;

    (5) whether a claimed misstatement of facts during the closing argument by the State to the jury deprived him of a fair trial; and

    (6) whether the sentence imposed upon him was excessive.

At approximately 3 P.M. on September 12, 1969, defendant Anderson walked into an auto parts store owned and operated by Joe and Arnold Rubin, located at 8420 South Vincennes Avenue on Chicago's south side. Anderson inquired of Joe Rubin concerning an auto part, and then left the premises. Approximately 20 to 25 minutes later, Anderson returned to the store carrying a brown paper bag, made a further brief inquiry, and then pulled from the bag a sawed-off shotgun and announced a holdup. Anderson was followed in the front door of the store by a man later identified as defendant Davis, who brandished an automatic pistol with a "clip" in the handle bottom, similar to those carried by Army officers. Thereupon, a third man appeared, coming in behind Davis, and he also carried a gun, characterized as a police-type revolver.

Defendant Davis ordered the Rubins to put their hands up, and then began to empty the store's cash register drawer, ultimately removing the entire cash tray from the drawer, which contained approximately $900 in paper currency and change. After further demands for money, the Rubin brothers handed over about $100 in cash and a $50 personal check from their wallets. The three men then left the store.

None of the three intruders wore masks or gloves during the incident, which lasted approximately 5 to 6 minutes. The area in which the incident took place was brightly lit by fluorescent lighting, the tubes for which had been changed some few days earlier.

Immediately after the incident, the police were telephoned, and Officer William Lieber responded to the call. Officer Lieber testified that, upon his arrival at the scene, he spoke with the Rubins and obtained descriptions of the three men. The men were described as follows: all three were male Negroes; one stood approximately 5' 10" or 5' 11" tall and weighed about 150 to 160 pounds; the second was 5' 9" or 5' 10" tall, of medium build, and wore a little goatee and a mustache—he was of a darker complexion than the other two; and the third was described as

very slightly built and much shorter than the other two. Additionally, Lieber procured a description of a Cadillac convertible, bearing the license number KD8819, which allegedly had been used by the three men. After having unsuccessfully combed the area for the auto, Officer Lieber sent out a radio flash message describing the auto to the police robbery detail, one of whom was James Doyle, a police investigator.

Investigator Doyle testified that, after having spoken with the Rubin brothers and Officer Lieber, and having obtained a description of the three men, the auto, and its license number, he checked the auto's registration through the Secretary of State's office, and, at approximately 6:50 P.M. on the day of the incident, he, along with three other police officers, proceeded to the vicinity of 21st Street and Springfield Avenue; that the officers placed the location of 2104 South Springfield—the address given him as that of the registrant, defendant Robert L. Davis, by the Secretary of State—under surveillance; that, at approximately 7 P.M., a Cadillac, bearing the license number KD8819, approached the area under surveillance; that the auto was occupied by three male, Negro passengers, two of whom rode in the front seat, the third in the rear seat; that the auto parked, and the driver, defendant Davis, got out of the driver's side and walked back to the trunk of the auto carrying a brown paper bag; that the four officers drove up to the auto, got out of their car, and that he, Doyle, went back to where Davis was opening the trunk of the Cadillac; and that, as Davis attempted to throw the brown paper bag, Doyle grabbed the bag, the bag split, and a shotgun fell out and onto the pavement.

Doyle went on to testify that he recovered the shotgun and two other weapons which were in the brown paper bag: a .32-caliber automatic pistol and a lightweight, snub-nosed "Colt" revolver; that the auto's three occupants, Davis, defendant Anderson, who had been seated in the passenger side of the front seat, and a third man, who had occupied the rear seat, were arrested and searched; that a white paper bag containing $14 or $15 in nickles, dimes, quarters, and pennies was taken from Anderson's person; that a brown paper bag containing $20 to $25 was taken from the person of the third man in the rear seat; and that $43 in United States currency was taken from Davis's person.

Later in the evening of September 12, 1969, the Rubins were summoned to the police station and were asked to view, separately, a lineup of four male Negroes, three of whom were the men arrested at the Springfield address. The fourth man in the lineup, who stood approximately 5' 10" in height, weighed about 160 pounds, and had gray hair, was a Chicago police officer. Both Joe and Arnold Rubin identified the three suspects as the men who had earlier in the day robbed their auto

parts store. Subsequent to the lineup and identifications, the Rubins identified the weapons confiscated by Doyle and his fellow officers as those which had been used by the three men during the holdup. During the course of their trial testimony, the Rubins again identified Davis and Anderson as two of the three men who had robbed them; the third man was not tried with the two defendants in the case at bar.

The brother of defendant Anderson testified that Anderson on September 12, 1969, and at the time of the trial, was 6′ 1″ tall. Investigator Doyle, on rebuttal, testified that on September 12, 1969, defendant Anderson told him he was 5′ 11″ tall and weighed 165 pounds. Thereafter, defendant Anderson stood before the jury upon the request of his attorney.

The record further shows that the recovered weapons, as well as the two bags of currency and coins which had been confiscated, were admitted into evidence; the $43 taken from defendant Davis's person was not admitted.

## I.

Defendant Davis urges that because the police officers involved in his apprehension failed to obtain warrants for his arrest and search, his arrest was without probable cause and the search made unreasonable.

■■ We have carefully examined the record presented here, and we find a complete lack of any objection to the admission of the evidence presented below on the ground that it had been obtained as the result of an illegal search or that Davis's arrest, itself, was illegal. Furthermore, the alleged errors were not included in defendant's written motion for a new trial, and, as this court said at page 664 of *People v. Jennings* (1st Dist. 1972), 5 Ill.App.3d 661, 284 N.E.2d 41, "When grounds for a new trial are stated in writing, a defendant on review is limited to the errors set out in the post-trial motion, and all others are regarded as having been waived. *People v. Irwin*, 32 Ill.2d 441, 207 N.E.2d 76; *People v. Hairston*, 46 Ill.2d 348, 263 N.E.2d 840; *People v. Landry*, 123 Ill.App.2d 86, 259 N.E.2d 604; *People v. Harper*, 127 Ill.App.2d 420, 262 N.E.2d 298."

Because we find that neither defendant nor his counsel moved to suppress the allegedly illegally obtained evidence or the allegedly illegal arrest in the court below, we do not consider those questions here. *People v. Harris* (1965), 33 Ill.2d 389, 211 N.E.2d 693.

On oral argument, counsel for defendant Davis, for the first time in this appeal, called this court's attention to an alleged discrepancy in the testimony of Investigator Doyle. At the preliminary hearing, Doyle testified that three guns which he described, were on the front seat of

the car at the time defendants were apprehended. He further said "It was in a brown paper bag." At the trial, Doyle testified that defendant Davis—when he got out of the car and proceeded to the trunk of the car—attempted to throw a brown paper bag, which then split, and a shotgun fell out. No attempt was made during any examination of Doyle to confront him with the apparent conflict. Whether this was as the result of trial strategy or whatever the reason may be, we cannot now speculate. This point was not raised in the trial court in any post-trial motion. In any respect, even assuming there is a conflict, we fail to see any error in light of the totality of the record.

## II.

■ ■ Defendants contend they were deprived of due process in that their in-court identifications allegedly resulted from an unnecessarily suggestive pretrial lineup and were not established by independent origin. The defendants, however, never moved to suppress the Rubins' identification testimony either prior to or during their trial in the court below; the record before this court is devoid of any objection by either defendant to the introduction into evidence of the identification testimony on the grounds now advanced for the first time on appeal. Therefore, we conclude, as did this state's supreme court in similar circumstances presented in *People v. Studdard* (1972), 51 Ill.2d 190, 198, 281 N.E.2d 678, "that all these objections to the show-up identification were waived and cannot now be reviewed." See also *People v. Harris, supra,* at pages 390-391, where the court said: "Justice will not be served by permitting a defendant to proceed through an entire trial without raising alleged error and then take advantage of such error on an appeal from an adverse judgment."

## III.

Defendant Davis contends that he was not afforded a fair trial in that his refusal to testify in his own behalf in the court below resulted from what he claims to have been a fear of prejudice founded upon the possible admission into evidence of a prior conviction. He states on appeal that he feared that proof of a prior conviction, or facts from another case, would be used in rebuttal to impeach his credibility.

After the State had rested its case against Davis and Anderson, a discussion took place, without the presence of the jury, to determine whether defendants were going to testify. Defendant Davis's counsel in the trial court stated that he had talked with his client, had gone over the case with him, and had discussed the possibility of his impeachment

if he elected to testify. Further, counsel stated that he had advised Davis formally, and very strenuously, not to take the witness stand. After having explained to counsel that the decision of whether Davis should testify was to be made by counsel and his client, the trial judge admonished counsel that the situation was "not a matter for the court to become involved in at all. It is a decision you must make." Thereupon, counsel for defendant Davis rested his case.

Defendant Davis argues that his refusal to testify was based on his fear that proof of a prior conviction of facts from another case would be used in rebuttal to impeach his credibility. The record contradicts this contention.

Counsel for defendant Anderson made an oral "motion for a protective order." It is clear that, although there was some discussion about the possible applicability of *People v. Montgomery* (1971), 47 Ill.2d 510, 268 N.E.2d 695, the State indicated that it would not use prior convictions for impeachment, but it did not intend to waive its right to cross-examine the defendants if they should take the stand. The record also showed that Anderson's counsel was in fact allowed to exhibit him to the jury and thus to indicate his height, which was the only issue discussed as the intended subject-matter of Anderson's proposed testimony in the trial court.

The State points out that there is no authority for the proposition urged by the defendant, namely, that the rule announced in *People v. Montgomery, supra,* should be the subject of an admonishment by the trial judge to the defendant, even where the defendant is represented by counsel. In *People v. Roberson* (1964), 30 Ill.2d 168, 195 N.E.2d 722, cited by the State, the trial judge did not advise the defendant, who was represented by counsel, that he need not testify, and the supreme court stated at page 170: "In the present case the defendant was represented by counsel of his own choice and we are of the opinion that it was not necessary for the trial judge to advise the defendant that he need not testify. His voluntary testimony at the request of his own attorney waived the constitutional privilege against self-incrimination."

■■ Similarly, under the facts here, both defendants, represented by counsel, voluntarily chose not to testify. The *Montgomery* question, while discussed, was never really put in issue. The record is silent as to any specific facts upon which the trial court could intelligently rule. The trial judge was not required to advise the defendants whether or not, in his opinion, it was prudent for them to testify. Defendant's refusals to testify, therefore, were voluntary and not the result of any error on the part of the trial judge.

## IV.

Both defendants contend that the prosecution's evidence in the court below failed to establish their guilt beyond a reasonable doubt. Defendants were positively identified by the Rubin brothers as two of the men who had robbed them during a 5- or 6-minute incident, which took place at 3:15 in the afternoon, in a fluorescent-lit store, and during which defendants were unmasked. Still further, the police, armed with a description of defendants, as well as of the auto used in the robbery and its license number, apprehended defendants in that very auto, registered to one of the defendants, a few hours after the commission of the offense; at that time, they were in possession of the very weapons which were later identified as those which had been used in the robbery. Both victims separately identified the defendants about 7 hours later.

For the purposes of disposing of this issue, it will suffice to quote from *People v. Novotny* (1968), 41 Ill.2d 401, 244 N.E.2d 182, where our supreme court addressed itself, at page 412, to the question of proof of guilt beyond a reasonable doubt:

> "It is neither the duty nor the privilege of a reviewing court to substitute its judgment as to the weight of disputed evidence or the credibility of witnesses for that of the trier of fact who heard the evidence presented and observed the demeanor of the witnesses (*People v. Mills*, 40 Ill.2d 4, 19; *People v. Anderson*, 30 Ill.2d 413; *People v. Orlando*, 380 Ill. 107, *cert.* denied 317 U.S. 694, 87 L.Ed. 555, 63 S.Ct. 435); and we will not reverse a criminal conviction where the evidence is not so improbable as to raise a reasonable doubt of guilt. *People v. Mills; People v. Ashley*, 18 Ill.2d 272, *cert.* denied 363 U.S. 815, 4 L.Ed.2d 1157, 80 S.Ct. 1255."

■■ Based upon a reading of the record on appeal, and in adherence to the settled law of this state, we find that defendants in the case at bar were proven guilty beyond a reasonable doubt in that the evidence presented below was not so improbable as to raise a reasonable doubt of guilt. See *People v. Stringer* (1972), 52 Ill.2d 564, 568-569, 289 N.E.2d 631.

## V.

Defendant Davis further contends that he was deprived of a fair trial owing to claimed misstatements of facts by prosecution counsel to the jury during the closing argument. Davis cites three instances of alleged misstatements by the prosecution: first, certain references made to the State's failure to introduce fingerprint evidence, though police

department technicians had processed the occurrence scene for same; second, certain statements made with respect to the fact that the auto registered to defendant Davis had been used in the robbery, when, it is claimed, Officer Lieber's testimony was devoid of any reference to the source of the auto's description or license number; and third, this statement, made by prosecution counsel to the jury: "You don't have to worry about the police protecting his rights. The court protects the rights of anybody on trial."

■■ With respect to the first instance, we find that, while the prosecutor made reference to the lack of fingerprint evidence (to which objection was made and sustained), defense counsel, in his earlier argument, had attempted to cast doubt upon the prosecution's case by, himself, commenting on the failure of the State to produce fingerprint evidence. Without belaboring the point, we find, upon a reading of the record, that prosecution counsel's remarks were made in response to earlier defense counsel remarks on the same subject, and it is the law of this state that one cannot provoke a reply to his own improper argument and then claim error. *People v. Anderson* (1971), 48 Ill.2d 488, 498, 272 N.E.2d 18.

Regarding the second instance, upon review of Officer Lieber's testimony, we are of the opinion that it may be reasonably inferred from his statements that the source of the description of the vehicle and its license number was in evidence, as well as the fact that the auto was registered to defendant Davis. It is to be noted that objection to these statements was not made in the trial court; moreover, Officer Lieber was subject to cross-examination on these points, and, if there was doubt in defense counsel's mind, he could have availed himself of an appropriate line of questioning. We find that the second instance to which defendant refers was not a misstatement of the facts.

The third instance of claimed misstatements, set out above, is, in our judgment, an anomaly with respect to the proceedings, whose meaning—much less its import—we are unable to divine.

In any event, we hold that the alleged misstatements in all the instances called to our attention by defendant did not constitute material factors in his conviction and that they were of such minor character that prejudice would not be their probable result. *People v. Smothers* (1973), 55 Ill.2d 172, 176, 302 N.E.2d 324; *City of Chicago v. Lawrence* (1969), 42 Ill.2d 461, 467-468, 248 N.E.2d 71; *People v. Swets* (1962), 24 Ill.2d 418, 423, 182 N.E.2d 150.

## VI.

Finally, defendant Davis contends that the two concurrent sentences of from 15 to 40 years imposed upon him were excessive and that a

review of those sentences should now be considered under the provisions of the Unified Code of Corrections. (Ill. Rev. Stat. 1973, ch. 38, par. 1001—1—1 *et seq.*) He contends specifically that sections 5—3—1 and 5—8—1(c)(2) of the Code were not considered with respect to the imposition of the sentences.

Section 5—3—1 provides as follows:

> "A defendant shall not be sentenced before a written presentence report of investigation is presented to and considered by the court where the defendant is convicted of a felony. The defendant may waive the presentence investigation and written report."

Section 5—8—1(c)(2) provides:

> "(c) The minimum term shall be set according to the following limitations:
>
> * * *
>
> (2) for a Class 1 felony, the minimum term shall be 4 years unless the court, having regard to the nature and circumstances of the offense and the history and character of the defendant, set a higher minimum term; * * *."

Regarding section 5—3—1, defendant claims that because no presentence report was requested or presented in the court below prior to sentencing, a new hearing in aggravation and mitigation should be afforded at which time defendant may present said report. With respect to section 5—8—1(c)(2), defendant asks that this court review the minimum sentence imposed, as the setting of a minimum sentence higher than four years for a Class 1 felony, such as armed robbery (Ill. Rev. Stat. 1973, ch. 38, par. 18—2), requires that the sentencing court have before it the history and character of the defendant, which, allegedly, the court below did not have.

■■ The record indicates that on May 21, 1971, the trial court conducted a thorough hearing in aggravation and mitigation as to each defendant before imposing each sentence. The effective date of the Unified Code of Corrections was January 1, 1973. We find nothing in the Code which would indicate any legislative intent to require the retroactive application of section 5—3—1, even before final adjudication in this court. (See *People v. Brezezinski* (1973), 15 Ill.App.3d 509, 305 N.E.2d 32.) Section 8—2—4 of the code (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1008—2—4) provides that "sentences under this Act apply if they are less than under the prior law upon which the prosecution was commenced." This language specifies only that the substantive sentencing provisions of the Code supercede the prior law when less than under the prior law. The Code does not provide retroactive effect for its other provisions.

■■ As to section 5—8—1(c)(2), which is a sentencing provision, the provision is inapplicable to the defendant under the terms of section 8—2—4. Recently in *People v. Killebrew* (1973), 55 Ill.2d 337, 303 N.E. 2d 377, the supreme court, at page 343, rejected similar contentions of an appellant convicted of armed robbery in the following language:

> "At the time the defendant was prosecuted and sentenced armed robbery was an offense punishable by 'any indeterminate term with a minimum of not less than 2 years.' Ill. Rev. Stat. 1967, ch. 38, par. 18—2(b).
>
> Thus, the defendant does not fall within the sentencing provisions of the Code. Its sentencing provisions provide for a greater minimum sentence than was provided for in the prior law under which this defendant was prosecuted and sentenced."

In our opinion, the sentences imposed do not contravene any of the provisions of the Code.

Defendant Davis, who was sentenced to not less than 15 nor more than 40 years, complains about the disparity with the 10-to-30-year sentence imposed upon defendant Anderson. He relies upon *People v. Richmond* (2nd Dist. 1969), 107 Ill.App.2d 394, 245 N.E.2d 916. We have reviewed the record as to the hearing in aggravation and mitigation. In our opinion, the able, experienced trial judge was in a better position than is the reviewing court to determine the proper punishment. We find no error in the sentences imposed.

The judgment of the circuit court of Cook County is affirmed as to each defendant.

Judgments affirmed.

HAYES, P. J., and STAMOS, J., concur.