THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, vs. FRANCIS R. BEIL, Plaintiff in Error.

*Opinion filed October 28, 1926.*

1. CRIMINAL LAW—*general rule as to when a new trial will be granted for improper cross-examination of defendant by State's attorney.* Where the State's attorney, in cross-examining a defendant, deliberately attempts to present to the jury matters which are improper, for the sole purpose of creating in the minds of the jurors an unwarranted prejudice against the defendant, justice requires, in a case where the proof of guilt is not clear, that a new trial should be granted, although objections to the questions improperly asked may have been formally sustained by the trial court, but where the evidence amply sustains the jury's verdict the judgment will not be reversed for the improper questions.

2. SAME—*when State's attorney may denounce defendant as guilty of crime charged.* It is within the scope of proper argument to denounce the defendant as guilty of the crime charged where guilt may be fairly inferred from the facts and circumstances shown by the evidence, and, where such is the case, it is not improper in a murder trial for the State's attorney to refer to the defendant as a murderer.

3. SAME—*State's attorney, in argument, may dwell upon evil results of acquittal of guilty parties.* A State's attorney has the right, in his argument to the jury, to dwell upon the evil results of crime and to urge a fearless administration of the criminal law, and it is not improper to refer to the evil result of acquitting a guilty person as encouraging like offenses.

4. SAME—*when the jury may be instructed as to manslaughter in a murder trial.* An instruction may properly be given that the accused may be found guilty of a lesser offense embraced in the crime charged if there is evidence on which to base the instruction even though there is also evidence that the crime charged was committed, and in a murder trial an instruction as to manslaughter may be given where there is evidence on which to base the instruction.

5. SAME—*accused found guilty of manslaughter cannot complain that he was not found guilty of murder.* The crime of manslaughter is embraced in a charge of murder, and the accused may be found not guilty of murder and convicted of manslaughter if

·the evidence authorizes it; and if the record contains evidence upon which a verdict of manslaughter may be returned, the fact that the evidence would have justified the jury in finding the defendant guilty of murder is not a matter of which he can complain.

WRIT OF ERROR to the Circuit Court of Jo Daviess county; the Hon. WILLIAM J. EMERSON, Judge, presiding.

HARRY C. TEAR, MAURICE J. MORIARTY, and LOUIS A. NACK, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, F. J. CAMPBELL, State's Attorney, and MERRILL F. WEHMHOFF, for the People.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

Francis R. Beil, usually called Frank Beil, was indicted at the February, 1926, term of the circuit court of Jo Daviess county for the murder of James Malone. The trial resulted in a verdict finding him guilty of manslaughter. Motions for a new trial and in arrest of judgment were overruled and Beil was sentenced to the penitentiary. He sued out a writ of error, which was made a *supersedeas,* and the record is here for review.

On January 5, 1926, plaintiff in error was forty-six years of age and resided in the city of Galena. He was engaged in the laundry and rug-cleaning business. He had been ill about a month, and on that day arose at 4:30 o'clock P. M. and had dinner an hour later. In the evening, while John McBride, William Murphy and Reuben Jerome visited plaintiff in error in the kitchen of his home, Malone, who was an acquaintance, entered through an outside door without knocking. He was partially intoxicated when he arrived. There was wine and beer on the table and Malone drank some of the wine. He spoke of trouble he had ex-

perienced at home and in the conversation used vile and obscene language. A little later Mrs. Langlotz called and was invited into the kitchen by Mrs. Beil because it was cold in the rest of the house. Malone was quarrelsome and addressed both women in a very offensive manner. He was cautioned by plaintiff in error not to repeat the objectionable language he had uttered and was told that if he could not refrain from insulting Mrs. Beil and her guest he should leave. Further discussion between them followed in another part of the house, and to a second request by plaintiff in error to leave, Malone replied that no one could put him out. Plaintiff in error then told Malone if he would not go willingly the police would be called for that purpose. Malone arose from his chair, and according to the testimony of plaintiff in error called him vile names, struck him in the face with one hand and on the head with the other, and threatened him. Malone then returned to the kitchen and continued his insulting language. Mrs. Beil and Mrs. Langlotz left the kitchen. Another acquaintance, Sam Kittoe, the deputy county clerk, arrived. Plaintiff in error again directed Malone to leave. Malone removed his coat, started toward plaintiff in error, put his coat on again, uttered a threat, and seated himself in a chair directly in front of the door leading from the kitchen to other parts of the house. Plaintiff in error then left the kitchen and returned with a shot-gun and fired it. He was ten or twelve feet from Malone when the shot was fired. The shot struck Malone in the right jaw and resulted in his death. McBride did not witness the shooting, for he had left shortly before it occurred. Murphy's back was turned, but he heard the shot and saw Malone fall to the floor. Jerome admitted that he had been drinking intoxicants both in the afternoon and evening and was half asleep. Kittoe testified that plaintiff in error left the room, came back in a few seconds with a gun, raised it to his shoulder and fired, and that at the time Malone was sitting in a chair at the end of the

table. Plaintiff in error testified that after he obtained the shot-gun he opened the door between the dining room and the kitchen; that when he did so Malone sprang into a crouching position and grabbed for a chair, and that he, plaintiff in error, fearing that Malone would assault him with the chair, raised the gun without putting it to his shoulder and fired. Immediately after the shooting he called the police by telephone and informed them of what he had done. He stated to those in the house that it was "either Malone or himself." When the police officer arrived plaintiff in error told him that he shot Malone because he was compelled to do so.

Malone was over six feet tall and weighed 180 pounds. His mother and sister testified that he was not intoxicated when he left his home at 6:35 P. M. on the day of the tragedy. Eight witnesses testified that the reputation of plaintiff in error as a peaceable and law-abiding citizen was good. On rebuttal for the State four witnesses testified that his reputation in that respect was bad.

The contentions urged by plaintiff in error for the reversal of the judgment are, (1) that the State's attorney persisted in asking improper and prejudicial questions after objections thereto had been sustained; (2) that the State's attorney and his assistant in their arguments to the jury indulged in prejudicial assertions not based on the evidence, for the purpose of inflaming the minds of the jurors against plaintiff in error; (3) that one of the prosecuting attorneys in his argument to the jury improperly read from notes of the testimony; and (4) that the court erred in giving, in refusing to give and in modifying instructions.

On the cross-examination of L. R. Bench and Frank J. Hess, who had testified that the general reputation of plaintiff in error as a law-abiding citizen was good, the State's attorney asked whether they ever had heard that plaintiff in error was a common bootlegger or that his place of business had been closed by an injunction. Objections to the

questions were sustained and the questions remained un-answered. While improper there was no prejudicial or reversible error in asking these questions.

It appears that plaintiff in error had resided in Arkansas for ten years prior to 1920. On cross-examination he was asked by the State's attorney whether he had trouble with any person while absent in that State, whether he had been closed out of the laundry business there, and whether on a night of the preceding summer he had gone out with a gun, looking for somebody. Objections to these questions were sustained, but it is insisted that the sole purpose of the questions was to prejudice the jurors against plaintiff in error and that the sustaining of the objections failed to remove that prejudice. The matters about which the inquiries were made had no connection with or relation to the offense charged and were foreign to the direct examination. Where the State's attorney deliberately attempts to present to the jury matters which are improper, for the sole purpose of creating in the minds of the jurors an unwarranted prejudice against the defendant, justice requires, in a case where the proof of guilt is not clear, that a new trial should be granted, although objections to the questions improperly asked may have been formally sustained by the trial court. (*People* v. *King,* 276 Ill. 138; *People* v. *Brocamp,* 307 id. 448; *People* v. *Decker,* 310 id. 234; *People* v. *Lewis,* 313 id. 312; *People* v. *Garines,* 314 id. 413.) In the instant case, however, there is no serious conflict in the evidence. It amply sustains the jury's verdict. While the objectionable questions should not have been asked, yet upon this record it cannot be said that they were prejudicial to plaintiff in error.

In the course of his argument to the jury the State's attorney, referring to the charge of murder, said, "When a man charged with that crime is on the stand he will not hesitate to do anything." An objection to the remark was sustained. The deduction was not a fair inference from

the evidence. Counsel should have spoken with more restraint, but it can hardly be said that the remark influenced the jury. Later, in the same argument, the State's attorney said, "It is up to you whether a murderer shall be turned loose." An objection to this remark was overruled. Counsel apparently based the remark upon his conception of the evidence, and it was not necessarily a statement of his view, apart from the evidence, that plaintiff in error was guilty. An inference of guilt is justified where it may be legitimately drawn from evidence in the record. It is within the scope of proper argument to denounce the defendant as guilty of the crime charged where guilt may be fairly inferred from the facts and circumstances shown by the evidence. *People* v. *Hagenow,* 236 Ill. 514; *People* v. *Dear,* 286 id. 142.

The assistant State's attorney in his argument to the jury said it was significant that although plaintiff in error had subpœnaed Mrs. Langlotz she was not called to the witness stand. The statement was withdrawn after an objection to it had been sustained. The attorney further said: "And if the story as put up by the defendant in this case will justify the killing and you could bring in a verdict of not guilty, why couldn't any other defendant?" An objection to this statement was overruled. Counsel's first statement was harmless. So far as the second is concerned, the observation that the acquittal of a guilty person would encourage like offenses is not improper. A State's attorney has the right, in his argument to the jury, to dwell upon the evil results of crime and to urge a fearless administration of the criminal law. *People* v. *Wood,* 318 Ill. 388.

During the argument of the assistant State's attorney counsel for plaintiff in error objected that the former read from notes which he had made of the evidence in the case. It developed that the assistant State's attorney had taken notes or memoranda of opposing counsel's argument and that he referred to them in addressing the jury. Obviously

plaintiff in error cannot complain of such memoranda or of the use made of them.

Plaintiff in error asserts that either he was guilty of murder or that the killing was justified in self-defense, and that therefore it constituted reversible error to instruct the jury that a verdict of manslaughter might be returned. An instruction may properly be given that the accused may be found guilty of a lesser offense embraced in the crime charged, if there is evidence on which to base the instruction, even though there is also evidence that the crime charged was committed. (*People* v. *Moore,* 276 Ill. 392.) The crime of manslaughter is embraced in a charge of murder, and the accused may be found not guilty of murder and convicted of manslaughter if the evidence authorizes it. (*People* v. *White,* 311 Ill. 356.) While Kittoe testified that Malone was sitting in a chair at the end of the table when plaintiff in error shot him, the testimony of plaintiff in error was to the effect that Malone sprang into a crouching position and grabbed for a chair before he, plaintiff in error, raised his shot-gun and fired. The jury evidently did not consider the latter's testimony sufficient to justify an acquittal on the ground of self-defense, yet deemed it sufficient to show that the killing was in the heat of passion and lacked the deliberation necessary to constitute the crime of murder. Where the record contains evidence upon which a verdict of manslaughter may be returned, the fact that the evidence would have justified the jury in finding the defendant guilty of murder is not a matter of which he can complain. (*People* v. *Treger,* 320 Ill. 329; *People* v. *Clements,* 316 id. 282; *People* v. *White, supra.*) The court properly instructed the jury that a verdict of manslaughter might be returned.

Plaintiff in error requested the court to give the jury the following instruction:

"The court instructs the jury that the law of self-defense is a law of necessity, which must be either real or appar-

ently real, so that there is a reasonable apprehension of loss of life or great bodily harm, and it appears that there is no other alternative than killing the assailant. Actual and positive danger is not indispensable to justify self-defense, but if the circumstances are such as to induce in the accused a reasonable and well-grounded belief that he is actually in present danger of losing his life or receiving great bodily harm, he will be justified in defending himself whether the danger is real or only apparent. The fear upon which the person may act by taking the life of another, is such fear as a reasonable person would entertain from the circumstances surrounding him at the time. The right is based upon appearances and circumstances sufficient to excite the fears of a reasonable person and the act must be the result of such reasonable fear, and if you believe from the evidence in this case that at the time the fatal shot was fired, defendant had a reasonable and well-grounded belief that he was actually in present danger of receiving great bodily harm, then he was justified in defending himself as he did, whether such danger was real or only apparent."

The court modified the instruction (1) by inserting in the second sentence, after the words "but if the circumstances are such as to induce in the accused," the clause "acting as a reasonable person;" (2) by striking out of the last sentence the words "had a reasonable and well-grounded belief," and inserting in lieu thereof, "acting as a reasonable person, under the circumstances, believed;" and (3) by inserting the words "of losing his life or," before the words "receiving great bodily harm," near the end of the instruction. It is contended that these modifications were prejudicial to the rights of plaintiff in error. The contention is untenable. (*People* v. *Simpson,* 270 Ill. 540; *People* v. *Borella,* 312 id. 34.) The instruction, however, requires of the defendant who justifies a homicide on the ground of self-defense, not only a reasonable but also a well-grounded belief, from the surrounding circum-

stances, that he is in danger of losing his life or receiving great bodily harm. The additional requirement of a well-grounded belief imposes the burden of a stricter or greater degree of proof than the law exacts, and the instruction is erroneous in that respect. (*People* v. *Davis,* 300 Ill. 226.) But this requirement was embodied in the instruction as requested by plaintiff in error, and he cannot for that reason complain of the error.

Finally, complaint is made of the court's refusal to give the jury, at the request of plaintiff in error, an instruction defining the law of defense of habitation. If any attack was threatened it was upon plaintiff in error solely. An instruction as modified was given which contained a reference to Malone's presence in the home of plaintiff in error, Malone's use of profane and obscene language, the request by plaintiff in error that Malone leave the home, the striking of plaintiff in error by Malone, the latter's threat and his attempt to rise from his chair and reach behind him; and the instruction concluded with the statement that if these acts on the decedent's part "created in the mind of the defendant, acting as a reasonable person under the circumstances, a reasonable and honest belief or apprehension that, if the attack or assault should be made upon him, he would be killed or would receive great bodily injury, then, under such circumstances, the defendant was not required to wait, before he would have the right to exercise his right of self-defense, until deceased actually did assault or injure him." This instruction, with others which were given, embodied the law upon every phase of the defense interposed, and the requested instruction was properly refused.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*