(No. 38829.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* JOHN CALCATERRA, Appellant.

*Opinion filed Nov. 19, 1965.—Rehearing denied Jan. 24, 1966.*

RICHARD E. RICHMAN, of Carbondale, for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, and KENNETH T. HUBLER, State's Attorney, of Marion, (FRED G. LEACH, Assistant Attorney General, of counsel,) for the People.

Mr. JUSTICE HOUSE delivered the opinion of the court:

A jury in the circuit court of Williamson County found defendant, John Calcaterra, guilty of selling a non-narcotic substance under the representation that it was a narcotic, in violation of section 38 of the Uniform Narcotic Drug Act.

(Ill. Rev. Stat. 1961, chap. 38, par. 22—40.) He was sentenced to the penitentiary for a term of three to ten years. A constitutional question gives us jurisdiction.

On October 23, 1961, two agents for the Illinois Division of Narcotics Control visited a tavern in Colp, Illinois, with the operation of which defendant was associated. The two officers were accompanied by an informer named Prigano, who had a prior acquaintanceship with defendant. The purpose of their visit was to see if narcotics could be purchased at the tavern. It is undisputed that the officers subsequently "made a deal" to purchase a quantity of marijuana for $50, and that they paid such a sum to one James Houston and received from him a sack containing crushed leaves. A subsequent chemical analysis of the leaves disclosed them to be of a non-narcotic species. Indeed, Houston, who was jointly indicted with defendant and entered a plea of guilty, testified that the substance was no more than common milkweed. The conflicts in the evidence center around the question of whether or not defendant was a participant in the fraudulent and unlawful sale.

According to the agent who went into the tavern, he was introduced to defendant by the informer and the three men then sat at a table having drinks. After some perfunctory conversation about stimulant pills and prostitution, the informer indicated that he wanted to buy some narcotics and marijuana. Houston, who was also acquainted with the informer, entered the tavern and joined the others at the table. A discussion concerning the purchase of narcotics was continued. After a short time Houston purportedly had a whispered conversation with defendant and stated: "We've got about a half pound or a pound of marijuana that you can have for $150." A price of $50 was finally agreed upon, after which Houston, the informer and the two agents drove to Carbondale where Houston entered a house for a short time and returned with a sack containing crushed leaves. They then returned to the parking lot of

the tavern in Colp, at which point Houston gave the sack of leaves to the agents and received $50. When they entered the tavern, according to the further testimony of the agent, defendant was standing at the end of the bar and inquired whether the "stuff" was satisfactory, after which Houston and defendant stepped into a back room where the former handed defendant the money he had received.

Defendant denied taking part in any discussion concerning pep pills or narcotics, and stated that after Houston entered he left the table and returned only to serve drinks. This was corroborated by a bartender, a waitress, the tavern handyman, and Houston. Likewise, he denied that he knew why the group left the tavern, or where they were going, or that he had on their return made any inquiry about the "stuff." He did, however, admit that he had received some money from Houston, but denied that it had been in a back room. His explanation was that he had done no more than change a large bill for Houston, a part of which he retained in satisfaction of a prior indebtedness. In this defendant was supported by the bartender who said that she had the only key to the back room and that defendant had not gone there, that Houston had first asked her to change the bill, and that she had sent Houston to defendant for change because the cash register had already been checked out.

The initial contentions of defendant are directed to the constitutional validity of section 38 of the act, which reads in pertinent part: "Whoever agrees, consents or in any manner offers to unlawfully sell, * * * to any person, or offers, arranges, or negotiates to have any narcotic drugs unlawfully sold, * * * and then sells, * * * or negotiates to have sold, * * * any non-narcotic liquid, substance or material shall be imprisoned in the penitentiary for any term from 1 year to 10 years." Defendant argues that the section is an improper exercise of the police power and that it is vague and uncertain, thereby causing him to

be deprived of his liberty without due process of law, and that it also violates the requirement of section 13 of article IV of the Illinois constitution that the subject of a legislative bill be expressed in its title.

Although conceding that the police power properly encompasses legislation designed to control and discourage traffic in narcotic drugs, defendant insists that a law making it a criminal offense to sell a non-narcotic substance is in no way related to the public health, safety, welfare or morals and is therefore an invalid exercise of the police power. The legislature might reasonably have assumed that when an individual purports to unlawfully furnish or arrange the sale of narcotic drugs he is participating in the illicit trade whether or not the substance he sells and furnishes is in fact a narcotic. By holding himself out as a source of supply he is encouraging the purchaser to continue his unlawful habit and, in selling a non-narcotic substance, the peddler is realizing funds which in many instances will be used to further actual narcotics traffic. Furthermore, as was observed in *People* v. *Shephard,* 169 Cal. App. 2d 283, 337 P.2d 214, where a statute comparable to our own was being considered, many vendors of narcotics upon initial contact will, in order to avoid selling to a police officer or informer, actually test the buyer by first selling him a non-narcotic substance. The section here enables enforcement officers to effectively meet this phase of the illegal drug traffic, and to prevent its development into actual sales of drugs. We conclude that the purpose of the section is to discourage illicit traffic in narcotics and is reasonably related to the public safety and welfare.

It is next contended that the section is vague and uncertain because it does not define "a non-narcotic liquid, substance or material." No definition is necessary for words of common and accepted meaning. Moreover, the crime described by the section is not the mere selling of a non-narcotic substance, as defendant's argument assumes, but is the

selling of such a substance under the representation that it is a narcotic drug. The meaning of the section is clear and adequately describes the evil to be met and the practices to be avoided. Cf. *Hershey Mfg. Co.* v. *Adamowski,* 22 Ill.2d 36.

Nor is the section violative of section 13 of article IV of our constitution. This court has consistently held that where the title of an act is general, any provision which is germane to the subject may be properly included in the act. (*People* v. *Landers,* 329 Ill. 453; *People* v. *McBride,* 234 Ill. 146; *People ex rel. Kell* v. *Kramer,* 328 Ill. 512.) As previously pointed out, the section is reasonably related to illicit traffic in narcotics, and to the act's purposes of discouraging and punishing those who engage in such traffic.

Defendant's contention that he was not proved guilty beyond a reasonable doubt is, in essence, an argument that the conflicting evidence should have been resolved in his favor. The solution rests squarely on the credibility of the witnesses, and it is axiomatic that the credibility of witnesses and the weight to be given their testimony is for the jury. (*People* v. *Coulson,* 13 Ill.2d 290; *People* v. *Bazemore,* 25 Ill.2d 74.) The jury could find from the evidence that the agreement to sell was reached only after Houston had a whispered conversation with defendant, and that the latter shared in the proceeds of the sale. It was not obliged to believe the testimony of defense witnesses that defendant had not participated in the conversation, nor their explanations as to why money was exchanged between defendant and Houston. *People* v. *Hanson,* 31 Ill.2d 31.

Some suggestion is also made by defendant that he should be released because he was entrapped into committing the crime. The defense of entrapment, however, is not available to an accused who, like defendant, denied having committed or participated in an unlawful act. *People* v. *Outten,* 13 Ill.2d 21.

There are numerous claims of trial error, some of which

are urged as having denied defendant a fair and impartial trial. Defendant asserts that he was prejudiced by two newspaper articles published on the eve of trial, by the trial court's statement to the prospective jurors that "this is a narcotics suit", by improper closing argument on the part of the State's Attorney concerning "dope" traffic and its evils, and by a remark of a rejected juror allegedly made on his *voir dire* examination. We find no error in any of these respects. There was no showing that any of the jurors had read the newspaper articles, (*People* v. *Gambino,* 12 Ill.2d 29; *People* v. *Miller,* 13 Ill.2d 84,) the court's remark was justified and substantiated by the indictment upon which defendant was being tried, the argument of the prosecutor was justified by the evidence and was within the bounds of legitimate argument, (*People* v. *Halteman,* 10 Ill.2d 74,) and the claim of an improper remark by a juror is *dehors* the record and not properly before us. *People* v. *Owens,* 23 Ill.2d 534.

It is also claimed that it was error to admit the sack of dried leaves into evidence because continuity of possession was not established. The record discloses otherwise. Through identifying marks placed on the bag by the agents who purchased it and the chemist who analyzed its contents, possession was established up to the time of trial. The trial court did not err in permitting the agent to testify concerning portions of his conversation with defendant relating to prostitution and stimulant pills. This testimony was merely part of the continuing conversation in which defendant participated and was so interwoven with the transaction for which he was being tried as to be a part of the *res gestae.* *People* v. *Marose,* 10 Ill.2d 340; *People* v. *Jarvis,* 306 Ill. 611.

Objection is also made to Peoples instructions Nos. 3 and 8. The former, which merely told the jurors that narcotic drugs included marijuana, was not objected to in the trial court and may not be attacked on appeal. (*People* v.

*Rave,* 364 Ill. 72.) By instruction No. 8 the jury was advised that the People had no obligation to call an informer as a witness, and defendant's objections are that it unduly singles out one witness and limits the duty of the People in a narcotics case. The instruction does not single out or give undue emphasis to a witness, and correctly states that the People have no duty to call an informer. *People* v. *Halteman,* 10 Ill.2d 74; *People* v. *Wright,* 27 Ill.2d 557.

Finally, it is urged that the penalty imposed by the court was unreasonably severe, and that the penalty provided for in the section is not apportioned to the nature of the offense as prescribed by section 11 of article II of the Illinois constitution. Considering the nefarious traffic the Uniform Narcotic Drug Act is designed to discourage, we cannot say that the penalty limit is so unjust or shocking to the conscience as to cause it to offend the constitution. A sentence within the maximum term fixed by the legislature is not cruel and unusual punishment prohibited by the constitution and will not be disturbed upon review. (*People* v. *Dolgin,* 6 Ill.2d 109; *People* v. *Landers,* 329 Ill. 453.) The sentence here was within the prescribed limits and will not be disturbed.

The judgment of the circuit court of Williamson County is affirmed.

*Judgment affirmed.*