(No. 49331.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. HENRY LEE SMITH, Appellant.

*Opinion filed Jan. 27, 1978.—Opinion modified March 31, 1978.*

98

MORAN and GOLDENHERSH, JJ., dissenting.

Robert Agostinelli, Deputy Defender, and Mary Robinson, Assistant Defender, of the Office of the State Appellate Defender, of Ottawa, for appellant.

William J. Scott, Attorney General, of Springfield (Donald B. Mackay, Melbourne A. Noel, and Timothy B. Newitt, Assistant Attorneys General, of Chicago, of counsel), for the People.

MR. JUSTICE DOOLEY delivered the opinion of the court:

Defendant, Henry Lee Smith, was found guilty by a jury in the circuit court of Peoria County of the offense of unlawful use of weapons in violation of section 24–1(a)(10) of the Criminal Code of 1961 (Ill. Rev. Stat.

1973, ch. 38, par. 24—1(a)(10)).

Defendant was sentenced to a term of imprisonment of not less than three nor more than nine years. On appeal, the appellate court affirmed the judgment. (45 Ill. App. 3d 66.) We granted leave to appeal pursuant to Rule 315 (58 Ill. 2d R. 315) of this court.

The issues are: (1) Was the revolver, located in a locked glove compartment of defendant's vehicle, "not immediately accessible" to defendant within the meaning of the statutory exemption to the crime of unlawful use of weapons (Ill. Rev. Stat. 1973, ch. 38, par. 24—2(b)(4))? and (2) Was the jury erroneously instructed?

On November 8, 1973, police officer Short of the Peoria Police Department was alerted by radio to look out for a vehicle with Illinois license plate No. UE 9281. He located the vehicle, parked and unoccupied. He was joined by Lieutenant Dyke to await its owner. Defendant was arrested when he was about to enter the vehicle, which he admittedly owned. Neither Officer Short nor Lieutenant Dyke saw the defendant in the vehicle or observed the weapon. At the station, after defendant had been advised of his rights, he signed a consent form permitting the police to search the automobile. According to Officer Poynter, the interviewing officer at the station, defendant had admitted that there was a gun in the glove compartment of the car and that he owned this weapon, which had been there for four days.

Defendant, according to the police, stated that he did not have the key to the glove compartment. Accordingly, the police employed screwdrivers to open the compartment. A fully loaded .22-caliber revolver was removed. This was received in evidence.

The State conceded that a person with a key could not have opened the glove compartment while driving the car. No identifiable fingerprints were found on the pistol.

Proof was made of defendant's prior felony conviction

and his release from the penitentiary within the past five years. Absent such evidence the crime would have been a misdemeanor, not a felony. Ill. Rev. Stat. 1973, ch. 38, par. 24—1(b).

Defendant testified on his own behalf. He admitted ownership of the automobile but denied ownership of the gun. He stated that he had not had a key to the glove compartment for a 10-month period prior to his arrest. He specifically denied statements to the contrary allegedly made to the police.

The crime for which defendant was tried does not apply where the weapon is not immediately accessible. The trial court found sufficient evidence had been received to raise the issue of nonaccessibility of the weapon.

The threshold question is whether the evidence was such as to justify a conviction under the statute (Ill. Rev. Stat. 1973, ch. 38, par. 24—1(a)(10)). In the present case defendant was convicted under section 24—1(a)(10) (Ill. Rev. Stat. 1973, ch. 38, par. 24—1(a)(10)):

> "Unlawful Use of Weapons. (a) A person commits the offense of unlawful use of weapons when he knowingly:
>
> \* \* \*
>
> (10) Carries or possesses in a vehicle \*\*\* within the corporate limits of a city, village or incorporated town, except when on his land or in his own abode or fixed place of business, any loaded pistol, revolver or other firearm."

This statute further provides in section 24—2 a list of "exemptions" of which the following is at issue here.

> "(b) Subsections 24—1(a)(4) and 24—1(a)(10) do not apply to or affect any of the following:
>
> \* \* \*
>
> (4) Transportation of weapons \*\*\* not immediately accessible." (Ill. Rev. Stat. 1973, ch. 38, par. 24—2(b)(4).)

Section 24—2(g) provides the following about the burden

of proof in relation to this list of exemptions:

> "(g) An information or indictment based upon a violation of any Subsection of this Article need not negative any exemptions contained in this Article. The defendant shall have the burden of proving such an exemption." Ill. Rev. Stat. 1973, ch. 38, par. 24—2(g).

So long as the weapon in question is in such proximity to the accused as to lie within easy reach so that the weapon is readily available for use, it is "immediately accessible." In *People v. McKnight* (1968), 39 Ill. 2d 577, a pistol was found six inches under the front seat of an automobile between defendant and the center hump. Since a normal understanding of the language controlled, the weapon was considered "immediately accessible." The defendant had only to bend down and reach under the seat to obtain its use.

*People v. Strompolis* (1971), 2 Ill. App. 3d 289, where a sawed-off shotgun was hidden in a case inside a panel on the driver's door of the vehicle, as well as *People v. Tilden* (1974), 26 Ill. App. 3d 447, and *People v. Cannon* (1974), 18 Ill. App. 3d 781, where the weapon was found under the driver's seat, determined that there was immediate accessibility to the weapon.

This crime can, of course, be established by circumstantial evidence. (*People v. McKnight* (1968), 39 Ill. 2d 577, 581.) Under the facts here, the question of defendant's violation of this law was for the jury. There was ample evidence to support the conviction.

The more difficult problem involves the propriety of the court's instructions to the jury. Inherent in this problem is the question of burden of proof—an important factor in any litigation, but having particular significance in a criminal case where the delicate scales of justice may be poised between guilt or innocence. At the request of the People, Illinois Pattern Jury Instruction Criminal No. 18.03 (1968), as modified by section 24—1(a)(10) and

section 24—1(b) of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, pars. 24—1(a)(10), 24—1(b)), was given:

"To sustain the charge of Unlawful Use of Weapons, the State must prove the following propositions:

First: That the defendant knowingly possessed in a motor vehicle within the corporate limits of a city a loaded revolver;

Second: That when he did so the defendant was not on his own land or fixed place of abode.

Third: That when he did so the defendant had been released from the penitentiary less than five years.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty."

It is to be noted that no reference is made to the issue of nonaccessibility or the burden of proof on this question. Defendant made no objection to that instruction.

At defendant's request the jury was instructed:

"The crime of unlawful use of weapons as charged here, does not apply to or affect the situation where such weapon is not immediately accessible.

The defendant has the burden of proving by a preponderance of the evidence that at the time of the crime charged he did not have immediate access to such weapon." IPI Criminal No. 18.02, as modified by section 24—2(b)(4) of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 24—2(b)(4)).

Defendant alleges error in this instruction given at his request in that it shifts the burden of proof on the issue of accessibility to the defendant. It should be noted that this is not a situation where the State's burden of proving its case in chief beyond a reasonable doubt is shifted to the defendant—a matter which can present an issue of conse-

quence, as *Patterson v. New York* (1977), 432 U.S. 197, 53 L. Ed. 2d 281, 97 S. Ct. 2319, *Mullaney v. Wilbur* (1975), 421 U.S. 684, 44 L. Ed. 2d 508, 95 S. Ct. 1881, and *In re Winship* (1970), 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068, make manifest.

We recognize that it is the obligation of defendant to object to a particular instruction. (See *People v. Anderson* (1971), 48 Ill. 2d 488, 498; *People v. Calcaterra* (1965), 33 Ill. 2d 541, 547.) So also, it is his duty to tender a proper instruction on a particular issue at trial. (*People v. Walls* (1965), 33 Ill. 2d 394, 398; *People v. Damen* (1963), 28 Ill. 2d 464, 469; *People v. Gratton* (1963), 28 Ill. 2d 450, 456; *People v. Carvin* (1960), 20 Ill. 2d 32, 35-36.) Failing to either object or tender a particular instruction will preclude him from raising objections on appeal to given instructions or lack of instruction. See *People v. Cesarz* (1969), 44 Ill. 2d 180, 189; *People v. Anderson* (1971), 48 Ill. 2d 488, 498; *People v. Calcaterra* (1965), 33 Ill. 2d 541, 547; 58 Ill. 2d R. 451(c).

Defendant relies on our Rule 615(a) to the effect that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court" (58 Ill. 2d R. 615(a)). Probably more relevant is our Rule 451(c) that "substantial defects are not waived by failure to make timely objections thereto if the interests of justice require" (58 Ill. 2d R. 451(c)).

But neither rule would normally cover the situation where the instruction of which defendant complains on review is one which he himself tendered in the trial court. *People v. Riley* (1964), 31 Ill. 2d 490, 496; *People v. Beil* (1926), 322 Ill. 434, 442; *People v. Fox* (1925), 319 Ill. 606, 619.

In this posture of the record there is grave doubt as to whether the issue is before us. We, however, believe that in light of the serious constitutional challenge to the instruc-

tions, it will further the administration of justice to determine whether "immediate accessibility" is an issue upon which the People or the defendant has the burden of proof. See *People v. Jenkins* (1977), 69 Ill. 2d 61.

It cannot be stressed too much that under this statute each element of the crime itself must be proved by the State beyond a reasonable doubt, and that this obligation of the State remains throughout the proceedings. See *Leland v. Oregon* (1952), 343 U.S. 790, 96 L. Ed. 1302, 72 S. Ct. 1002; *In re Winship* (1970), 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068; *Mullaney v. Wilbur* (1975), 421 U.S. 684, 44 L. Ed. 2d 508, 95 S. Ct. 1881; *Rivera v. Delaware* (1976), 429 U.S. 877, 50 L. Ed. 2d 160, 97 S. Ct. 226; *Patterson v. New York* (1977), 432 U.S. 197, 53 L. Ed. 2d 281, 97 S. Ct. 2319.

The legislature has added to the unlawful use of weapons statute a long litany of exemptions. Ten separately enumerated exempt categories apply to those charged with violation of section 24–1(a)(10). (Ill. Rev. Stat. 1973, ch. 38, pars. 24–2(a), 24–2(b).) For the State to be saddled with negating each defendant's place in each of the 10 exempt categories would place impossible burdens upon effective prosecution of this type of case. The legislature has avoided this problem by requiring the prosecution to prove each and every element of the offense beyond a reasonable doubt and by requiring the defendant to prove his entitlement to the exemption.

That such exemptions are distinct from affirmative defenses under our statutory scheme and never become an issue for the State to prove is shown by the provisions of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 1–1 *et seq.*). The Code defines an affirmative defense and provides that, once the issue is raised, the burden is on the State to prove that issue, together with all other elements of the offense, beyond a reasonable doubt. (Ill. Rev. Stat. 1973, ch. 38, par. 3–2.) To the contrary, the

State need never negate any exemption. (Ill. Rev. Stat. 1973, ch. 38, par. 24—2(g).) Substantially similar treatment of exemptions is found in the Cannabis Control Act (Ill. Rev. Stat. 1975, ch. 56½, par. 716) and the Illinois Controlled Substances Act (Ill. Rev. Stat. 1975, ch. 56½, par. 1506).

Whenever the legislature intends a provision to constitute an affirmative defense to a crime it has labeled it as such. Illustrative are the affirmative defenses to such crimes as indecent liberties with a child (Ill. Rev. Stat. 1975, ch. 38, par. 11—4(b)), bigamy (Ill. Rev. Stat. 1975, ch. 38, par. 11—12(b)), disseminating obscene material (Ill. Rev. Stat. 1975, ch. 38, par. 11—20(f)), disseminating harmful material to a child (Ill. Rev. Stat. 1975, ch. 38, par. 11—21(e)), unlawful use of recorded sounds (Ill. Rev. Stat. 1975, ch. 38, par. 16—7(i)), unlawful restraint (Ill. Rev. Stat. 1975, ch. 38, par. 16A—6), and criminal defamation (Ill. Rev. Stat. 1975, ch. 38, par. 27—2).

Had the legislature intended to treat these exemptions as affirmative defenses, it would have labeled them as such.

We turn now to the crucial question before us. Is it within the constitutional power of the legislature to place the burden of proving these exemptions on the defendant?

Dealing with crime, including the procedures under which State laws are administered, is preeminently the business of the State and is not subject to the due process clause unless " 'it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' " *Patterson v. New York* (1977), 432 U.S. 197, 202, 53 L. Ed. 2d 281, 287, 97 S. Ct. 2319, 2322.

State courts have been called the "ultimate expositors of state law." (*Mullaney v. Wilbur* (1975), 421 U.S. 684, 691, 44 L. Ed. 2d 508, 515, 95 S. Ct. 1881, 1886.) As we understand the teachings of the United States Supreme Court, as expressed in *Leland v. Oregon* (1952), 343 U.S.

790, 96 L. Ed. 1302, 72 S. Ct. 1002, *In re Winship* (1970), 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068, *Mullaney v. Wilbur* (1975), 421 U.S. 684, 44 L. Ed. 2d 508, 95 S. Ct. 1881, *Rivera v. Delaware* (1976), 429 U.S. 877, 50 L. Ed. 2d 160, 97 S. Ct. 226, and *Patterson v. New York* (1977), 432 U.S. 197, 53 L. Ed. 2d 281, 97 S. Ct. 2319, so long as the State is required to exact proof beyond a reasonable doubt of each fact necessary to the crime charged, there is no violation of the due process clause. The statute under consideration meets this test. It is only the exemption of nonimmediate accessibility upon which the defendant has the burden of proof by a preponderance of the evidence.

In *Leland v. Oregon* (1952), 343 U.S. 790, 96 L. Ed. 1302, 72 S. Ct. 1002, Oregon's statutory provision which obligated a criminal defendant to prove beyond a reasonable doubt his insanity at the time of the commission of the crime of murder was held constitutional. The burden of proving all elements of the crime beyond a reasonable doubt was on the State and remained there throughout the trial. Although 20 States at that time required the accused to prove his insanity, Oregon was the only one requiring the defendant to prove his insanity beyond a reasonable doubt. The due process clause was not offended.

In *Mullaney v. Wilbur* (1975), 421 U.S. 684, 44 L. Ed. 2d 508, 95 S. Ct. 1881, a Maine law requiring the defendant to establish by a preponderance of the evidence that he acted in the heat of passion on provocation to reduce a murder charge to manslaughter was contrary to the due process clause. Such proof had to negate an indispensable element of the crime charged. Due process requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented in a homicide case.

In *Rivera v. Delaware* (1976), 429 U.S. 877, 50 L. Ed.

2d 160, 97 S. Ct. 226, the Delaware statute imposed upon the defendant the obligation of proving the affirmative defense of insanity by a preponderance of the evidence. The appeal was dismissed as not presenting a substantial Federal question.

*Patterson v. New York* (1977), 432 U.S. 197, 53 L. Ed. 2d 281, 97 S. Ct. 2319, dissipates any arguments concerning the constitutionality of imposing upon the defendant the burden of proving by a preponderance of the evidence such a defense as we are considering. There the defendant was charged with second-degree murder, which in New York has two elements: (1) intent to cause the death of a certain person; and (2) causing the death of such person.

New York law permits an affirmative defense of "act[ing] under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse." (*Patterson v. New York* (1977), 432 U.S. 197, 198, 53 L. Ed. 2d 281, 285, 97 S. Ct. 2319, 2321.) The jury was instructed that the defendant had the burden of proving the affirmative defense by a preponderance of the evidence.

This is not only the latest pronouncement of the United States Supreme Court, but it presents the identical issue before us. *Patterson* discusses at length *Leland, Winship, Mullaney* and *Rivera*. It concludes that the New York murder statute did no more than *Leland* and *Rivera* "permitted it to do without violating the Due Process Clause. Under those cases, once the facts constituting a crime are established beyond a reasonable doubt, based on all the evidence including the evidence of the defendant's mental state, the State may refuse to sustain the affirmative defense of insanity unless demonstrated by a preponderance of the evidence." 432 U.S. 197, 206, 53 L. Ed. 2d 281, 289-90, 97 S. Ct. 2319, 2325.

It continued:

"The New York law on extreme emotional disturbance follows this pattern. This affirmative defense, which the Court of Appeals described as permitting 'the defendant to show that his actions were caused by a mental infirmity not arising to the level of insanity, and that he is less culpable for having committed them,' 39 N.Y.2d, at 302, 347 N.E.2d, at 907, does not serve to negative any facts of the crime which the State is to prove in order to convict of murder. It constitutes a separate issue on which the defendant is required to carry the burden of persuasion; and unless we are to overturn *Leland* and *Rivera,* New York has not violated the Due Process Clause, and Patterson's conviction must be sustained." 432 U.S. 197, 206-07, 53 L. Ed. 2d 281, 290, 97 S. Ct. 2319, 2325.

In commenting on the Criminal Code of New York, the court notes that it contains some 25 affirmative defenses.

"The Due Process Clause, as we see it, does not put New York to the choice of abandoning those defenses or undertaking to disprove their existence in order to convict of a crime which otherwise is within its constitutional powers to sanction by substantial punishment." 432 U.S. 197, 207-08, 53 L. Ed. 2d 281, 290-91, 97 S. Ct. 2319, 2326.

Here the Illinois criminal code has 10 exemptions applicable to this specific crime.

We accordingly hold that it was proper to instruct the jury that the burden of proving, by a preponderance of the evidence, that the defendant came within an exemption to the statute was upon him. The burden of proving each element of the crime is always upon the State and remains so thoughout the proceedings. The instructions given met

this test.

The judgment of the appellate court is affirmed.

*Judgment affirmed.*

MR. JUSTICE MORAN, dissenting:

This case should not have gone to the jury. The defendant's motion for a directed verdict should have been allowed at the close of the State's case in chief.

In my view, the majority has incorrectly posed the first issue. The threshold question is whether the revolver, within a locked glove compartment to which there was no key, was "immediately accessible" to the defendant. On that question, my review leads me to a conclusive "No."

In the case in chief, the State's evidence disclosed that a search of the defendant and his vehicle did not reveal a key to the glove compartment. It was argued to the jury that defendant could have disposed of the key when he noticed the officers. Not only is this argument purely conjectural and unsupported by the record, but it is disproved by the State's own witnesses. The officers testified that defendant, who was outside the car, was but a short distance from them when he first noticed their presence, and the officers stated that they were able to observe defendant at all times prior to the arrest. There is simply no evidence that the defendant disposed of the key.

An important fact—one not mentioned in the majority's opinion—was brought out, again, by the State. It took between 5 and 10 minutes for the glove compartment to be opened with the aid of two screwdrivers. This fact alone proved that the weapon was not immediately accessible.

In each of the cases cited by the majority, the weapon was accessible in a matter of seconds. That fact makes those cases clearly distinguishable from the instant case.

Under the State's evidence in its case in chief, it was shown that the gun was not immediately accessible to the defendant. It was therefore unnecessary for the defendant

to prove the exemption. On this basis, the trial court should have directed a verdict for the defendant. As a result of today's opinion, the court has deleted the phrase "not immediately accessible" from the legislative enactment.

MR. JUSTICE GOLDENHERSH joins in this dissent.