THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GREG A. HESLER, Defendant-Appellant.

Fourth District    No. 4—95—1005

Opinion filed July 17, 1997.

Daniel D. Yuhas and Gary R. Peterson, both of State Appellate Defender's Office, of Springfield, for appellant.

Michael D. Clary, State's Attorney, of Danville (Norbert J. Goetten, Robert J. Biderman, and James Majors, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE COOK delivered the opinion of the court:

Defendant Greg Hesler was charged with unlawful use of weapons in violation of section 24—1(a)(4) of the Criminal Code of 1961 (Code) (720 ILCS 5/24—1(a)(4) (West 1994)). Following a bench trial, defendant was convicted. Defendant appeals, challenging the sufficiency of the evidence to sustain the conviction. We affirm.

On October 15, 1994, at about 10:40 p.m., Timothy Hetrick, a police officer for the City of Danville, was conducting roadside safety checks. The check involved stopping vehicles and checking for drivers with suspended licenses or who were intoxicated. Hetrick approached defendant's vehicle, a black Chevy pickup truck. As soon as he started talking to defendant, he noticed there was a revolver on the seat of the truck next to defendant's right leg. The cylinder of the revolver was missing.

Hetrick "drew [his] duty weapon. Ordered [defendant] to put his hands out the window." Defendant was cuffed and placed in the backseat of a squad car. Hetrick testified that, "[a]fter [defendant] was removed [from his truck,] we done [*sic*] a further search of the vehicle. I found a cylinder, which was out of the revolver, laying [*sic*] on the floor, which would have been underneath [defendant's] right leg. And it was loaded with six live rounds of .22 ammunition." Subsequently, Hetrick testified that he did not believe all six rounds were actually in the cylinder; he believed a couple of them had fallen out on the floor.

Hetrick was of the opinion that it would take less than 30 seconds

to reassemble the gun, although he could not recall whether he actually attempted to do so himself. Hetrick did not see defendant remove the cylinder from the gun, nor did he see defendant make any movements that would suggest defendant was removing the cylinder. Nonetheless, Hetrick testified that it was his opinion that defendant had removed the cylinder only upon seeing the police officers. He based his opinion upon three facts: (1) the presence of only six rounds suggested to Hetrick that the gun was not going to be used for target practice; (2) that the weapon was on the seat next to defendant suggested to Hetrick that defendant carried the gun for protection; and (3) that the cylinder was found on the floorboard, "as if someone had just dropped it in the floorboard, it's just not—not any type of common sense way to be transported [sic]." At the end of the State's evidence, defendant asked for a "directed verdict." Defendant's motion was denied.

Defendant testified that the gun was not assembled while it was in his truck. Defendant said the revolver was wrapped in a towel and lying on the seat next to him. When he saw that he was being stopped, he unwrapped the disassembled revolver and placed it on the seat next to him so that it would be in plain sight. According to defendant, the cylinder and the six rounds were in a map pouch on the front of the driver's seat, near his legs. After his arrest, defendant said he borrowed a friend's gun, which is identical to his, and attempted to assemble the gun under like circumstances (in the dark). Defendant testified it took over four minutes to assemble and load the gun under those circumstances, but on cross-examination he admitted that his assembly of the gun included checking it for obstructions to make sure the gun could be properly fired.

Hetrick testified, upon rebuttal, that he did not recall seeing a towel or a map pouch in defendant's truck. After hearing argument, the trial court found defendant guilty. The trial court was of the opinion that defendant failed to prove by a preponderance of the evidence that he is entitled "to the exception as far as transportation of weapons broken down in a non-functioning state or not immediately accessible to him." The trial court then concluded that, "[b]ased upon the testimony of the officer as to the position of the weapon and its accessory[,] it would appear to the court that this was immediately accessible to the defendant and could have been assembled *** in a very brief period of time." Because defendant had no prior arrests or convictions, except for a speeding ticket, the court sentenced defendant to one year's conditional discharge and ordered defendant to pay $150 plus costs. In addition, defendant was ordered to pay a $100 public defender fee.

■ Defendant's sole contention upon appeal is that he was not proved guilty beyond a reasonable doubt. Where a defendant raises the question of reasonable doubt on review, the relevant inquiry is whether, " 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *People v. Burrows*, 148 Ill. 2d 196, 225, 592 N.E.2d 997, 1009 (1992), quoting *People v. Steidl*, 142 Ill. 2d 204, 226, 568 N.E.2d 837, 845 (1991). This standard is applicable whether the evidence is direct or circumstantial. *People v. Ward*, 154 Ill. 2d 272, 314, 609 N.E.2d 252, 269 (1992). Circumstantial evidence is sufficient to sustain a conviction if it satisfies proof beyond a reasonable doubt of the elements of the crime charged. *People v. Gomez*, 215 Ill. App. 3d 208, 216, 574 N.E.2d 822, 827 (1991), citing *In re Winship*, 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970). It is the function of the fact finder to weigh the evidence, judge the credibility of the witnesses, and resolve conflicts in the evidence. *People v. Neither*, 166 Ill. App. 3d 896, 900, 520 N.E.2d 1247, 1249 (1988).

■ Defendant was convicted of unlawful use of weapons. 720 ILCS 5/24—1(a)(4) (West 1994). In pertinent part, that statute reads:

> "A person commits the offense of unlawful use of weapons when he knowingly:
>
> * * *
>
> (4) carries or possesses in any vehicle or concealed on or about his person except when on his land or in his own abode or fixed place of business any *** revolver ***." 720 ILCS 5/24—1(a)(4) (West 1994).

There is no dispute that defendant possessed a revolver in his vehicle and that he was neither on his land, nor in his abode or fixed place of business. Rather the dispute in this case focuses upon whether defendant fell within a statutory exemption to the unlawful use of weapons charge. Section 24—2(b)(4) of the Code provides that section 24—1(a)(4) does not apply or affect the "[t]ransportation of weapons that are broken down in a non-functioning state or are not immediately accessible." 720 ILCS 5/24—2(b)(4) (West 1994). A person charged with unlawful use of weapons must prove, by a preponderance of the evidence, that he falls within one of the exemptions. 720 ILCS 5/24—2(h) (West 1994); *People v. Smith*, 71 Ill. 2d 95, 109, 374 N.E.2d 472, 478 (1978); *cf.* 720 ILCS 5/3—2 (West 1994) (affirmative defenses).

Defendant relies upon *People v. Freeman*, 196 Ill. App. 3d 370, 553 N.E.2d 780 (1990). In *Freeman*, the defendant's car was stopped because it did not have a functioning license plate light. The police officer claimed that, as he approached the car, he saw the defendant

making movements that suggested to the police officer that the defendant was sticking something in his pocket. When the officer found that the defendant did not have a valid driver's license, the defendant was arrested and searched. The cylinder to a revolver was found in the defendant's left pants pocket, and a revolver was found under a cardboard box on the front seat. The trial court did not believe the police officer's testimony that the defendant disassembled the gun upon the officer's approach. Nonetheless, the trial court convicted the defendant because of the court's belief that the pistol was within the defendant's immediate control. The appellate court reversed because a "broken down, cylinderless pistol, incapable of being fired, not in immediate operating condition, and not immediately accessible" does not fall within the purview of the unlawful use of weapons statute. *Freeman,* 196 Ill. App. 3d at 373, 553 N.E.2d at 782.

*Freeman* is confusing, as it seems to mix the exemptions found in section 24—2(b)(4) of the Code. As noted, however, that subsection states that section 24—1(a)(4) does not apply or affect the "[t]ransportation of weapons that are broken down in a non-functioning state *or* are not immediately accessible." (Emphasis added.) 720 ILCS 5/24—2(b)(4) (West 1994). Whether the weapon is broken down and whether the weapon is inaccessible constitute separate exceptions.

■ There are at least three ways an average citizen can legally transport a firearm. First, the possessor of a valid firearm owner's identification card (FOID card) can legally transport an unloaded firearm so long as it is enclosed in a container. 720 ILCS 5/24—2(i) (West 1994); *People v. Bruner,* 285 Ill. App. 3d 39, 42-43, 675 N.E.2d 654, 656 (1996). Second, a person can legally transport a firearm by placing it in an area that is not immediately accessible, such as a locked trunk. 720 ILCS 5/24—2(b)(4) (West 1994). Finally, a person can legally transport a firearm that is "broken down in a non-functioning state." 720 ILCS 5/24—2(b)(4) (West 1994). The first two methods are inapplicable to the instant case, and defendant does not argue otherwise. Rather, defendant argues that he proved, by a preponderance of the evidence, that he was entitled to the "broken down" exemption.

Under the "broken down" exemption, removing the cylinder from a revolver or the bolt from a rifle would render the weapon legal for transportation purposes, even if the two parts were sitting next to each other on the front seat of the vehicle. *Cf. People v. White,* 253 Ill. App. 3d 1097, 1098, 627 N.E.2d 383, 384 (1993) (suggesting that, in a prosecution for possession of firearms by a felon, "temporarily inoperable firearms which can be made operable within a reasonable time fall within the purview of the statutes governing use and pos-

session of firearms"). The statute requires only that the weapon be broken down and in a nonfunctioning state, and nothing more. Any other conclusion would make it difficult for owners of pickup trucks and vans to transport firearms.

■ The evidence in this case establishes that defendant's revolver was broken down by the time Hetrick reached defendant's truck. However, that is not the only relevant time period: if defendant disassembled the weapon because he saw he was being approached by the police, then defendant was guilty of unlawful use of a weapon in violation of section 24—1(a)(4) of the Code. 720 ILCS 5/24—1(a)(4) (West 1994).

In the instant case, the trial court was somewhat unclear as to its rationale for finding guilt. Nonetheless, reading the comments of the trial judge in their entirety leads us to conclude that the judge disbelieved defendant's claim that he had removed the cylinder prior to transporting the weapon. First, the trial judge distinguished *Freeman* because the trial court there found the defendant had broken down the gun before transporting the weapon. Next, the trial court noted Hetrick's testimony regarding the position of the gun, the position of the cylinder, and the position of the ammunition and then stated that defendant had failed to prove by a preponderance of the evidence that "he is entitled to the exception as far as transportation of weapons broken down in a non-functioning state or not immediately accessible to him." In short, the trial court disbelieved defendant's claim that he had disassembled the revolver prior to putting it in his truck.

The trial court then concluded that, based upon the proximity of the revolver and the cylinder to defendant, the gun was "immediately accessible to the defendant and could have been assembled *** in a very brief period of time." As noted, defendant was not required to show the parts of the gun were inaccessible, so long as he had shown the gun was broken down in a nonfunctioning state. Nonetheless, it was necessary for the court to address the revolver's accessibility. The determination of whether a defendant is entitled to the "broken down" exemption requires the trier of fact to make a single determination: was the firearm disassembled during the *relevant* time period? If the answer to the question is "yes," then the transportation was lawful. However, if the answer is "no," then the fact finder must determine whether the firearm was immediately accessible, because it is legal to transport a fully assembled firearm so long as it is not immediately accessible. In the instant case, the trial court rejected defendant's claim that the revolver was disassembled prior to his being stopped by the police. It is uncontroverted that the fully as-

sembled weapon would have been immediately accessible, and the trial court's comments on the accessibility of the revolver, in this respect, were proper.

Viewing the evidence in the light most favorable to the prosecution, the cylinderless revolver was on the seat next to defendant, the cylinder and ammunition were on the floor at his feet. It is reasonable to infer from this evidence that defendant disassembled the weapon immediately prior to Hetrick's approach. The trial court could have reasonably concluded the State proved the essential elements of the crime beyond a reasonable doubt.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

McCULLOUGH and GREEN, JJ., concur.